## Henry v. Reeser, et al.

(Decided March 19, 1913.)

### Appeal from Jefferson Circuit Court
### (Common Pleas Branch, Second Division).

1. Contracts—Exchange of Property—Action for Damages—Minds of Parties—Evidence.—In an action for damages for the failure of appellant to comply with the terms of certain writings exe-

cuted by the agents of himself and appellee for the exchange of property, evidence examined and held that the minds of the parties had not met, and there was no agreement between them.

2. Contracts—Parol Evidence—Consideration.—In an action upon an alleged contract for the exchange of property, while the memorandum relied on should be considered as that of his agent and not binding upon appellant, yet to treat it as binding, the minds of the parties had not met as to the question of interest. While parol evidence might be introduced to show the consideration, there is no evidence written or parol to show any agreement to pay interest on the note from its date or at all.

3. Contracts—Non-delivery of Paper.—Without delivery a paper never becomes a complete contract and is not enforceable.

W. W. CRAWFORD for appellant.

EDWARDS, OGDEN & PEAK for appellees.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

On November 10, 1909, James A. McClelland, a real estate agent of Louisville, representing appellant, W. H. Henry, submitted to John Boyd Kennedy, another real estate agent in the same city, representing appellees, the following written proposition, to-wit:

"For your flat building, with all improvements thereon, lot 65x180 ft. to an alley, located on the east side of Fourth Street, beginning 115 ft. north of A Street, I will give Lots Nos. 13, 14, 22, 26, 27, and 28, and the south western 20 ft. of Lot No. 25, all of Block A, on Richmond Avenue, also Lots Nos. 1 and the west 25 ft. of Lot 15, and the east 10 ft. of Lot. 16, and the west 20 ft. of Lot 19, all of Lots 20 and 21, and all of lot 27, Block B, Richmond Avenue, in Jefferson County, Kentucky, and $4,400.00 cash, and assume a mortgage not to exceed the sum of $16,000.00, said mortgage payable on or before five years, with interest at six per cent, payable semiannually, and now held by the Kentucky Title Company, the interest on the mortgage to be paid up to date by the present owner of the flat building.

"I will give general warranty deed to all of the property on Richmond Avenue, and the same is to be free of all encumbrances, except the taxes for the year 1910, which are to be paid by the purchaser. The Fourth Avenue property is to be free of all encumbrances, except the state and county taxes for the year 1910, and the above mentioned mortgage, which I assume and agree to pay.

"The owner of the flat building is to surrender me title policy, free of charge.

"The roof on the flat building is to be guaranteed to me for ten years direct by the parties who put the roof on, and a written guarantee to that effect is to be made. The screens to every outside door and window of flat building are to be furnished by present owner at his cost, The flat building is to be completed, inside and out, in every particular, the flower bed now designed in the rear is to be completed, all of the electric appliances, and all supplies now on hand are to remain in the building, and to be my property.

The conditions herein named are to become effective before any deed is signed or passed.

                    "Yours truly,
                         W. H. Henry,
              "By James A. McClelland, Agent."

Appellees declined to accept the proposition, but submitted the following counter-proposition on the same paper:

"The best I can do is $7,000 cash instead of $4,400 cash.                    W. M. Reeser."

This counter-proposition was not accepted by appellant, but his agent, McClelland, wrote on the same paper the following additional counter-proposition:

                    "Louisville, Ky., Nov. 16, 1909.
"I will give you the sum of $3,400 cash and a second lien note of $2,000 on my property as described in the within proposition, and assume the mortgage of $16,000 now on the apartment house.

                         W. H. Henry,
              "By James A. McClelland, Agent."

Underneath that on the same paper appellee, W. M. Reeser, undertook to accept the whole proposition as amended in the following writing signed by him, to-wit:

"I accept the above proposition $2,000 above mentioned to be a lien on the Fourth Street flat building due in one year from date, with six per cent interest."

Although Reeser undertook to put the last writing in the form of an acceptance, it shows on its face that it was not, in fact, an acceptance, but merely a conditional acceptance, or rather, in fact, a counter-proposition.

It is perfectly manifest that up to this point the minds of the parties had not met, and there was no agreement between them. While the matter was in this attitude, on the 22nd of November appellant and Reeser accompanied by their respective agents met at the apartment house.

The evidence discloses that there was some discussion between the parties at that time as to when the $2,000 note should mature, and there is some difference between the parties as to exactly what did occur, and as to whether or not the parties did finally agree orally; but, at any rate, McClelland, the agent of appellant, upon his return to his office where the paper containing the original written proposition and counter-propositions was, made the following memorandum thereon:

"November 22, 1909.

"The parties, Mr. W. H. Henry and W. M. Reeser, agreed that the second lien note for $2,000 on the flat building should be made payable on or before two years instead of one year.

"11, 22, 09. McC."

None of the parties were present when this last memorandum was made by McClelland.

Appellant having failed or refused to comply with the terms of these writings, appellee instituted this action for damages against him, and upon the trial was awarded a verdict of $1,000, and appellant's motion and grounds for a new trial having been overruled, he appeals. At the close of the evidence for the plaintiff, the defendant entered a motion for a peremptory instruction, which motion was overruled.

What was the effect of the memorandum of November 22nd? It is clear that up to the time of the meeting of the parties at the apartment house on that day, their minds had not met, and it is equally clear that when appellant went to the apartment house on that day, he did not expect to meet Reeser, or his agent Kennedy, and it may be, therefore, fairly inferred that he was at the time not expecting or intending to close the deal.

In all the writings previous to the 22nd of November, McClelland had always signed "W. H. Henry by James A. McClelland, Agent," thus in the most formal way assuming his role as agent of Henry, and notifying all others connected with the deal that he was so acting; but when he comes to make the memorandum of November 22nd, in-

stead of acting in his formal capacity as agent for Henry, and evidently without any purpose so to do, and without holding out to anyone that he is so acting, he merely puts down in an informal way his recollection and interpretation of a conversation between Henry and Reeser, and instead of formally signing Henry's name by himself as agent, he merely puts to the memorandum an abbreviation of his own name. There is nothing in that writing indicating that McClelland thought the deal was closed, or that he was so treating it.

Considering all the facts and circumstances throughout the whole transaction, and all the negotiations, it is perfectly manifest that McClelland in making that memorandum was merely making one for his own convenience and to show for his own future purposes what had occurred between the parties and how far the negotiations between them had progressed, and was in no sense undertaking as the agent of Henry to close up any contract between him and Reeser.

The conduct of appellant immediately after the transaction is conclusive that he did not consider the deal closed; in a day or two thereafter, he telephoned to his agent, McClelland, asking the return to him of all the papers, and when McClelland, in response to that request, mailed to him only copies of all the papers, including his memorandum of November 22nd—that being the first notice he had of that memorandum—appellant immediately went to McClelland's office, demanded and received the original papers, and before leaving the office, and in the presence of McClelland scratched out the memorandum made thereon dated the 22nd of November.

But if we should treat the memorandum of November 22nd as a writing signed by appellant, did the minds of the parties meet? In appellant's counter-proposition of November 16th he says: "I will give you the sum of $3,400 cash and a second lien note of $2,000 on my property as described in the within proposition;" in appellees' conditional acceptance or counter-proposition, he says: "I accept the above proposition, $2,000 above mentioned, to be a lien on the Fourth Street flat building, due in one year from date, with six per cent interest," thereby fixing the maturity of the $2,000 note which appellant had not fixed, and prescribing the additional provision that it should bear six per cent interest.

Treating the memorandum of McClelland on November 22nd as a writing of appellant, and as binding him on

the question of the maturity of the $2,000 note, still the minds of the parties had not met with reference to whether that note should bear interest. When appellees tendered to appellant a deed for the apartment house, they at the same time tendered to him a note for his signature due in two years, and bearing interest from date, payable semi-annually, and he declined to sign the note, and declined to accept the deed.

Treating all the writings as having been signed by appellant himself, he nowhere bound himself to execute a $2,000 note bearing interest from date, or even after maturity. It is true that parol evidence might be introduced to show the consideration, but in this record there is no evidence written or parol to show that appellant ever at any time agreed to pay interest on that note from its date or at all. In the case of McKnight v. Broadway Investment Co., 147 Ky., 545, this court, in dealing with a case somewhat similar to this, said:

"It is not enough that there should be a writing, signed by the grantor, merely stating that he proposed to lease certain premises, describing the premises, upon certain terms to be mutually agreed upon; but the memorandum relied upon must contain the terms—it must furnish the evidence of the terms, for this is the very purpose for which the statute was enacted. The terms of the lease, the time it is to begin, the conditions upon which it is to be executed, the various provisions setting forth the respective rights, duties and obligations of the contracting parties, are of the very essence of the contract, and they must necessarily be reduced to writing in order to take the case out of the statute. These are the pivotal points upon which the question of leasing would turn. The statute expressly provides that the consideration need not be stated in writing. It may be proven by parol; and since the consideration may be shown by parol, under appellee's theory, all that would be necessary to state would be that an offer to lease was made in writing and accepted, and all of the terms and conditions might be proven by parol. If such a rule obtained, courts, when called upon to enforce the specific performance of contracts, would be compelled to rely upon the uncertain and frequently warped and biased memories and recollections of witnesses. When it is considered that this is the very evil to correct which the statute was passed, it is apparent that this contention is not sound."

It is clear that the minds of the parties never met as to all the details of the transaction.

But if appellant himself had signed a paper binding upon him and if it be conceded that the minds of the parties met on November 22nd, still it appears that after the execution of that memorandum by McClelland the writing was never delivered to either appellees or their agent Kennedy and without delivery it never became a complete contract, and was not enforcable.

But, above all that, this court has held under the statutes of Frauds and Perjuries in a contract for the sale of real estate, that "the party to be charged" is the vendor who is to be divested of title thereto, and that to be binding it is necessary that he shall sign the same, but that it is only necessary that the vendee shall accept it to make it binding upon him. But where there is an exchange of real estate, as in this case—that is, where each party is to be divested of title to real estate—is it not necessary that they should each sign the writing before either is bound? If it might become binding upon one of the parties by his mere oral acceptance thereof, would it not divest him of the title to real estate without any evidence in writing against him which the statute of Frauds requires? Are they not each vendors and are they not each therefore "the party to be charged"? But it is not essential to the decision of this case to determine this question, and it is not decided.

Appellant's motion for a peremptory instruction should have prevailed.

Judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.